FILED

2012 Mar-26  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **REBECCA U. GALEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **CASE NO. 2:10-cv-01930-SLB** |
| | } | |
| **CHARTER   COMMUNICATIONS, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 20.)[1] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 20), is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255.  Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every *reasonable* inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988))(emphasis added).

## II.  <u>STATEMENT OF FACTS</u>[2]

### <u>Background</u>

Plaintiff is a 49-year-old Caucasian. (Pl.'s Depo. at 37:21-22, 120:4-5.)  On July 2, 2008, Defendant hired Plaintiff as an Office Operations Supervisor at its Vestavia Hills, Alabama office. (Doc. 22-12 at 10, Wilder Aff. Ex. 1.)  Plaintiff replaced the position formerly held by Lamesa Brooks ("Brooks"), an African-American in her thirties. (Pl.'s Depo. at 38:10-12, 41:10-11.)  Plaintiff directly reported to Office Operations Manager Joan

---

[2]As required when determining a motion for summary judgment, the court has construed the facts in the light most favorable to plaintiff, the non-moving party.  All disputed facts are resolved in her favor, and all reasonable inferences arising from those facts are drawn in her favor.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990); *Zaben v. Air Prods. & Chems, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

Oliver ("Oliver"), a 53-year-old Caucasian. (Pl.'s Depo. at 45:19-22; doc. 22-12 ¶ 3, Wilder Aff.; doc. 22-12 at 10, Wilder Aff. Ex. 1.)

As Office Operations Supervisor, Plaintiff was a salaried employee with job responsibilities which included, among other things, "hir[ing], train[ing], monitor[ing] and evaluat[ing] office personnel," and overseeing the activities of the office's customer service counter. (Pl.'s Depo. at 99:15-17; doc. 22-12 at ¶ 5, Wilder Aff.; doc. 22-12 at 13-14, Wilder Aff. Ex. 1.)  At customer service counters, customers could hand-deliver cash payments directly to Defendant's representatives, swap equipment, or receive other general customer service needs. (Doc. 25-6 at 18:22-19:1, Wilder Depo.)  Plaintiff summarized her job responsibilities as "manag[ing] [her] team," which consisted of approximately ten employees at the Vestavia Hills office. (Pl.'s Depo. at 101:16-20, 112:5-6.)

### The Tami Garner Incident

In July 2009, Plaintiff received information that Tami Garner ("Garner"), a customer counter representative under her supervision, allegedly violated Defendant's cash handling procedures.[3] (*Id.* at 148:10-19.) Plaintiff immediately contacted Human Resources Generalist Lawrence Pitmon ("Pitmon") regarding these allegations, and Defendant conducted an internal investigation. (*Id.* at 148:10-20, 149:8-12, 150:14-21; *see* doc. 22-12 at 23, 26, Wilder Aff. Ex. 4.)

---

[3]Plaintiff cannot remember the time frame when the allegations about Garner were brought to her attention. (Pl.'s Depo. at 151:4-8.)  The investigative report, dated July 29, 2009, notes that Garner's cash handling violations occurred through July 1, 2009. (Doc. 22-12 at 23, Wilder Aff. Ex. 4.)  Thus, the court deduces that Plaintiff learned of the Garner allegations in July 2009.

The investigation revealed that between April and July of 2009, Garner had stolen approximately $1,449.51 by converting ten hand-delivered cash payments for personal use. (Doc. 22-12 at ¶ 9, Wilder Aff.; doc. 22-12 at 23, Wilder Aff. Ex. 4.)  The investigation also determined that Garner's thefts occurred and went undetected due to Plaintiff's failure to comply with multiple procedures and policies in her role as Office Operations Supervisor. (Doc. 22-12 at ¶ 9, Wilder Aff.; *see* doc. 22-12 at 23-26, Wilder Aff. Ex. 4.)  These findings apparently triggered a subsequent investigation into Plaintiff's alleged misconduct and its relation to the Garner incident.[4] (Doc. 22-12 at 23, Wilder Aff. Ex. 4.)  The subsequent investigation was led by Oliver and Defendant's Business Manager, Patrick Bailey ("Bailey"). (Doc. 22-12 ¶ 11, Wilder Aff.; doc 22-12 at 26, Wilder Aff. Ex. 4.)

During the course of this investigation, Oliver and Bailey found that Garner requested, and received, the deletion of proof reflecting her receipt of the ten cash payments which she converted. (Doc. 22-12 at 23, Wilder Aff. Ex. 4.)  Eight of the cash payment entries were deleted by Plaintiff or someone with Plaintiff's confidential computer user identification and password. (*Id*. at 23.)  Defendant's cash handling policy provides that the "deletion of cash payments [is] not allowed without documentation from the [Customer] Counter Representative (dual receipts), a valid explanation of the reason the deletion was necessary, and backup email sent from the [Customer] Counter Representative to the [Office]

_____

[4]Defendant's investigation notes relating to Plaintiff's alleged misconduct directs the reader to "Tami Garner's investigation notes for further information on the initial investigation[.]" (Doc. 22-12 at 23, Wilder Aff. Ex. 4 [emphasis omitted].)  The court here infers that Defendant conducted a separate investigation into Plaintiff's misconduct following the Garner investigation.

Operation[s] Supervisor regarding the deletion." (Doc. 22-12 at ¶ 8, Wilder Aff.)   The investigative report determined that Plaintiff deleted the eight entries without receiving "dual receipts," and Plaintiff could not produce emails from Garner evidencing why the deletions were necessary. (Doc. 22-12 at 23-24, Wilder Aff. Ex. 4.)  Plaintiff testified that she could not recall deleting any cash payment entries and surmises that another employee deleted the entries by obtaining her computer log-in credentials from a notebook accessible in her desk. (Pl.'s Depo. at 155:11-156:10.)   Other Office Operations Supervisors also kept their computer log-in information in similar notebooks. (*Id*. at 162:19-20.)  In addition, Plaintiff could not produce signed copies of daily adjustment reports which alert Office Operations Supervisors of discrepancies and unapproved adjustments on customer accounts. (Doc. 22-12 at 24, Wilder Aff. Ex. 4.)  Defendant requires that Office Operations Supervisors maintain signed, hard copies of daily adjustment reports in a secured file. (*Id*.)

Based on these findings, the investigative report charged Plaintiff with the following policy violations:

> **Accurate Records and Expense Reports**
> All employees are expected to keep accurate and complete records at all times. "Records" include all documents (including those kept electronically) containing . . . accounting, inventory, financial, securities, or corporate information; installation and maintenance reports; <u>customer records; sales transaction and billing records</u> . . . All records must be accurately and promptly recorded.

(Doc. 22-12 at 25, Wilder Aff. Ex. 4 [emphasis in original].)[5]
> **Code of Conduct - Proper Documentation and Controls**

---

[5]The investigative report states that Defendant's "Accurate Records and Expense Reports" policy may be found on Page 111 of the Employee Handbook.  (Doc. 22-12 at 25, Wilder Aff. Ex. 4.) This page of the Employee Handbook does not contain this rule. (*See* doc. 22-15 at 25, Wilder Aff. Ex. 5.)

You are responsible for following any operational, administrative, documentation, and accounting procedures and controls applicable to your areas of responsibility.  Internal controls and procedures provide assurance and evidence that Charter's interests and assets are protected and properly used; that Charter's reports are truthful, accurate, and complete; that procedures are appropriate to achieve Charter's business objectives; and that administrative and accounting policies and procedures are complied with throughout the organization.

In carrying out your responsibilities in this area, you must assure that:

- Charter's accounting and documentation policies and procedures are followed;
- All funds, assets, and transactions are fully and accurately recorded and entered in Charter's books and records in accordance with Charter's written procedures and with applicable accounting standards, so that accounting records accurately and fairly reflect all business transactions[.]

(*Id*. at 25, Wilder Aff. Ex. 4; doc. 22-15 at 24, Wilder Aff. Ex. 5.)

### Company Computers, Electronic Media, Vehicles, and Other Company Property - Security

All user IDs and passwords must be unique and kept confidential.  You are prohibited from performing any function on any computer resource using another employee's user ID, password, or other log-on information.  You are accountable for all activities attributed to your user ID and password. . . . You also are encouraged to change your password from the password originally assigned by the company in order to provide added protection.

(Doc. 22-12 at 25, Wilder Aff. Ex. 4; doc. 22-15 at 9, Wilder Aff. Ex. 5.)  The investigative report also concluded that Plaintiff violated Defendant's "Performance Expectations" policy, which requires, *inter alia*, that all employees meet company expectations, comply with all established policies and procedures, and "follow [Defendant's] Code of Conduct, Business Integrity, and Ethics policies[.]"  (Doc. 22-12 at 25, Wilder Aff. Ex. 4; doc. 22-13 at 40-41, Wilder Aff. Ex. 5.)

**Defendant's Disciplinary Policy**

Defendant has a progressive disciplinary policy that may be utilized at the company's discretion. (Doc. 25-4, Pl.'s Ex. 4.)  This policy contemplates a verbal warning, followed by a written warning, final warning, and termination. (*Id.*)  However, if the nature and severity of the offense warrants, Defendant may accelerate the levels of disciplinary action up to and including immediate termination. (*Id.*; doc. 25-6 at 50:15-16, 57:21-23, 58:8-10, Wilder Depo.)  According to Defendant's Director of Human Resources Paige Wilder ("Wilder"), the progressive discipline policy provides a noninclusive list of policy infractions and factors that can result in immediate termination. (Doc. 25-6 at 50:9-14, Wilder Depo.)  Wilder testified that "depending on the type of policy violation[,] any violation can result in immediate termination." (*Id.* at 50:15-16.)

**Plaintiff's Termination**

On August 5, 2009, Oliver held a meeting with Plaintiff and informed her that she was being terminated for not following cash handling procedures. (Pl.'s Depo. at 142:14-22; *see* doc. 25-4, Pl.'s Ex. 4.)  Pitmon was also present at the meeting. (Pl.'s Depo. at 145:2-9.)  Plaintiff received no documents stating why she was terminated. (*Id.* at 145:22-146:1.)  Wilder testified that, although Defendant's Human Resources department reviews and approves termination decisions, Oliver ultimately made the decision to terminate Plaintiff. (Doc. 25-6 at 42:3-8, 45:13-19, Wilder Depo.)

**Plaintiff's Replacement**

Defendant initially replaced Plaintiff with Collete Crawford ("Crawford"), a 37-year-old Caucasian, until Crawford was promoted in October 2009. (Doc. 25-3 at 14, Def.'s Resp. to Pl.'s First Set of Interrogs.; doc. 25-6 at 85:7-10, Wilder Depo.)[6]  During the time Crawford assumed Plaintiff's job responsibilities, she continued to perform her prior existing job duties. (Doc. 25-3 at 14, Def.'s Resp. to Pl.'s First Set of Interrogs.)  Eugene Duane Green ("Green"), a 46-year-old Caucasian, permanently took over Plaintiff's former position in December 2009. (*Id.*; doc. 25-6 at 46:2-10, 46:17-21, 85:11-14, Wilder Depo.)

**Other Alleged Instances of Discrimination**[7]

Plaintiff believes that Defendant – particularly Oliver – wrongfully discriminated against her based upon her age and race.  Plaintiff claims that several incidents throughout her tenure are demonstrative of unlawful race and age discrimination.

When hired, Plaintiff was told she would receive a laptop computer, (Pl.'s Depo. at 38:7-9), but Defendant never issued Plaintiff a laptop throughout her entire employment, (*id.* at 38:12-13).  Defendant provided Office Operations Supervisors Brooks and Crawford with laptop computers. (*Id.* at 38:7-12, 77:2-5.)  Brooks and Crawford supervised two office

---

[6]Defendant contends that Crawford was one of several people who temporarily replaced Plaintiff. (Doc. 26 at 6.)  However, for purposes of the motion for summary judgment, the court will assume Crawford replaced the Plaintiff.

[7]Count VII of the Complaint brings a claim pursuant to the Fair Labor Standards Act based on Defendant's alleged failure to pay Plaintiff overtime. (Doc. 1 at 15-17, Compl.)  Plaintiff's opposition concedes that her overtime claim is due for dismissal because she was a salaried employee. (Doc. 24 at 29.) Plaintiff also concedes that her failure to promote claims are due to be dismissed.  (*Id.* at 27.)

locations,[8] but Plaintiff supervised more employees. (Pl.'s Depo. at 40:1-5, 40:8-13, 78:2-6, 78:2-11.)  Plaintiff complained to Oliver about not receiving a laptop, and Oliver reassured her that she was working on acquiring one. (*Id*. at 122:7-13.)  Oliver sent IT requisitions for a laptop on behalf of Plaintiff. (Doc. 25-1, Pl.'s Ex. 1.)  IT Manager Jim Marks responded to Oliver's request as follows: "Is the position required to travel?  Currently if the position does not require travel[,] laptops are not issued.  Please provide more justification." (*Id*. at 2.)  Marks later rejected Oliver's laptop request on Plaintiff's behalf. (*Id*. at 1.)  Wilder testified that Office Operations Supervisors "potentially," yet "very rarely," are required to travel. (Doc. 25-6 at 21:7-13, Wilder Depo.)

In addition, Defendant provided Portia Ragland ("Ragland"), an African-American, and Crawford with one day of training into Defendant's cash handling procedures. (*Id*. at 62:6-18.)  Plaintiff mentioned to Oliver that similar training was not available to her. (*Id*. at 62:15-16.)  Plaintiff testified "that option was not available to [her], because [the Vestavia Hills office] had so much traffic [that she] needed to be there." (*Id*. at 62:16-18.)

---

[8]Plaintiff contends that Brooks supervised only one office location and still received a laptop. (Doc. 24 at 11, 15.)  However, the evidence reflects that when Brooks was reassigned from the Vestavia Hills office, she moved to Defendant's Gardendale office and also supervised Defendant's Trussville office. (Pl.'s Depo. at 40:1-4.)  Brooks only supervised one office after the Trussville location closed.  Plaintiff has not produced any evidence that Brooks received her laptop *after* the Trussville office closed, and her own deposition testimony strongly suggests the contrary. (*Id*. at 38:12-17 ["I never received [a laptop] my entire employment with [Defendant], but [Brooks] did, and she also removed her desktop out of the office that I was moving into to go to her new office. She took her phone, her desktop and *she also received a laptop PC*." (emphasis added)], 123:8-10 ["I'm assuming [Brooks] had [her laptop] when the [Trussville] office closed.  I don't know for sure when she got it."].)

Prior to her termination, Plaintiff heard comments which she believes demonstrate age-related discriminatory animus.  (*Id*. at 86:16-87:6, 87:11-15.)  Oliver told Plaintiff that Sharon Walker, a clerk in her sixties  "needed to retire and get on with it." (*Id*. at 86:16-87:5, 87:16-88:5.)   Plaintiff defended Walker by stating that she was a hard worker, loyal employee, and worked overtime. (*Id*. at 88:12-16, 89:2-6.)  Crawford allegedly mentioned to Plaintiff that Walker was "older and opinionated . . . needed to keep it to herself and possibly it was time [for her] to leave." (*Id*. at 91:9-12.)

## Plaintiff's Complaints

Plaintiff complained about various aspects of her employment on three separate occasions.  The first complaint concerned Plaintiff voicing her displeasure to Oliver about not receiving a laptop computer as explained *supra*.

Second, Plaintiff complained to Defendant's marketing director out of Atlanta about her and her team's excessive workload. (*Id*. at 59:11-12, 59:18-21.)   According to Plaintiff, Defendant's marketing director asked her "why [her team] [was not] working on other things, [and] why [her team] [was] not out there [doing] more coaching." (*Id*. at 59:18-20.)  Plaintiff told Defendant's marketing director that she was unable to attend to these tasks "because I'm doing other work that's been given to me." (*Id*. at 59:20-21.)  Plaintiff testified that she and her team frequently worked nights and weekends in order to complete "other" tasks assigned by Oliver. (*Id*. at 60:6-8.)   Upon learning of Plaintiff's conversation with Defendant's

marketing director, Oliver became "upset." (*Id.* at 59:22-23.)  Plaintiff testified that this complaint led to verbal chastisement, presumably from Oliver.[9] (*Id.* at 111:22-112:2.)

Third, Plaintiff complained to Pitmon regarding Oliver's abusive behavior towards her shortly after Plaintiff reported the Garner allegations to Pitmon in Human Resources. (*Id.* at 128:17-23.)  Plaintiff testified that, when Oliver learned that Plaintiff had directly reported the Garner allegations to Pitmon, she called Plaintiff into the conference room. (*Id.* at 80:11-20, 81:6-9.)  With Bailey and Crawford present, Oliver called Plaintiff "immature," among "other things." (*Id.* at 81:9-11, 81:13-15.)  Oliver accused Plaintiff of not contacting her and told her she should not have reported the Garner allegations directly to Human Resources. (*Id.* at 81:11-13.)  Oliver then called Plaintiff's subordinates into the conference room, questioned them, "and said things to [Plaintiff] in front of them." (*Id.* at 81:15-17.)  Plaintiff reported this incident to Pitmon, and Pitmon told Plaintiff that Oliver was known for "overreacting." (*Id.* at 128:21-129:8.)  Plaintiff does not recall telling Pitmon that she believed her treatment stemmed from age or race discrimination. (*Id.* at 130:5-6, 130:23-131:5.)

---

[9]Plaintiff also alleges that she received additional work as a result of her conversation with Defendant's marketing director. (Doc. 24 at 5.)  This construction of the facts conflicts with her deposition testimony.  Plaintiff testified, "Well, obviously I had more work because I had more people, and when I asked for equipment it was like I was given more and more work.  And even when I said something to the sales director from Atlanta, it was like I was being -- I was chastised for even mentioning how much workload we had." (Pl.'s Depo. at 111:19-112:2.)  Thus, Plaintiff's deposition testimony indicates that her receipt of additional work related to her requests for additional equipment, not her conversation with the marketing director.

11

**Filing of this Suit**

On October 6, 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated and retaliated against her on the basis of her race and age. (Doc. 1 at 20, Compl. Ex. A.)  The EEOC issued a Notice of Right to Sue letter on April 19, 2010. (*Id*. at 19, Compl. Ex. B.) Plaintiff filed this action on July 16, 2010.

## III.  DISCUSSION

The Complaint contains the following claims: Counts I and II - race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); Counts III and IV - race discrimination and retaliation in violation of 42 U.S.C. § 1981 ("§ 1981"); Counts V and VI - age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*. ("ADEA"); Counts VII and VIII - failure to pay overtime and retaliation in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA").[10] (Doc. 1 at 5-17, Compl.)

## A.     FLSA CLAIMS (COUNT VII AND COUNT VIII)

In her opposition brief, Plaintiff waives her overtime claim because she is a salaried employee and thus not entitled to overtime.  (Doc. 24 at 29.)  At oral argument, Plaintiff's counsel waived Plaintiff's FLSA retaliation claim because Plaintiff failed to engage in

---

[10]The Complaint labels Plaintiff's FLSA retaliation claim as "Count Two," but sequentially it should be titled "Count Eight." (Doc. 1 at 16, Compl.)  The court refers to this claim as "Count VIII."

conduct invoking the statute's protections. Accordingly, Defendant's Motion for Summary Judgment as to Counts VII and VIII of Plaintiff's Complaint is due to be granted.

**B.    DISCRIMINATION CLAIMS (COUNT I, COUNT III, AND COUNT V)**

Plaintiff contends that Defendant discriminated against Plaintiff in violation of Title VII, Section 1981, and the ADEA by failing to provide her with a laptop computer, by failing to provide her with training relative to its cash handling procedures, by denying her promotions, and by terminating her employment. (*See* Doc. 1 ¶¶ 8-10, 16-18, 21, 23, Compl.)

**1.    Waived/Abandoned Claims**

Defendant has moved for summary judgment as to Plaintiff's failure-to-train claim on the basis that failing to receive one day of training does not constitute an adverse employment action. (Doc. 21 at 26.) Defendant also moves for summary judgment regarding Plaintiff's failure-to-promote claim because Plaintiff has not adduced evidence establishing three of the four requisite prima facie elements of race or age discrimination. (*Id*. at 27.) In opposition, Plaintiff expressly concedes that a failure to provide a day's training does not amount to an adverse employment action, (doc. 24 at 26), and further concedes that her failure-to-promote claim should be dismissed due to Defendant's policy that employees be employed more than one year before being considered for promotion, (*id*. at 27). Therefore, the court finds that Plaintiff has waived these claims.

Defendant's Motion for Summary Judgment also correctly contends that failing to receive a laptop computer is not an adverse employment action. (Doc. 21 at 24-26.) Plaintiff

in opposition fails to address Defendant's contention.  Therefore, the court deems that Plaintiff has abandoned this claim. *See Smith v. Int'l Paper Co.*, 160 F. Supp. 2d 1335, 1347 (M.D. Ala. 2001)(citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) *cert. denied* 516 U.S. 817 (1995)).

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claims for failure-to-promote, failure-to-train, and failure to receive a laptop are due to be granted.

### 2.      Discriminatory Discharge

Defendant contends that Plaintiff's discriminatory discharge claims are due to be dismissed because she cannot establish a prima facie case of discrimination under Title VII, Section 1981, or the ADEA, nor can she demonstrate that defendant's articulated reasons for her discharge are pretext for unlawful discrimination.[11]

The same evidentiary framework is used to analyze claims of race discrimination brought pursuant to Title VII and Section 1981. *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000)(citing *Peterson v. BMI Refractories*, 132 F.3d 1405,

---

[11]Defendant also argues that Plaintiff's ADEA discrimination claim is due for dismissal pursuant to the United States Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009). (Doc. 21 at 15-17.)  In *Gross*, the Court found that ADEA plaintiffs must demonstrate that age was the "but-for" cause of the adverse employment action suffered. *Gross*, 129 S. Ct. at 2351.  Defendant interprets this standard as precluding age discrimination claims when the plaintiff simultaneously posits discrimination based upon her membership in other protected classes. (Doc. 21 at 16-17.) This court has rejected this argument. *See Putnam v. Sterilite Corp.*, 2:10-cv-01054-SLB (N.D. Ala. 2012)(adopting report and recommendation of magistrate judge holding in part that "requiring proof that a prohibited consideration was the 'but-for' cause of an adverse job action does not equate to a burden to show that such consideration was the 'sole' cause" (citations omitted)).

1412 n.13 (11th Cir. 1998)).   When a plaintiff has not adduced direct evidence of discrimination based upon race, as here, courts evaluate such claims under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In the past, courts have used the *McDonnell Douglas* framework to evaluate age discrimination claims brought pursuant to the ADEA. *See Hurst v. Sam's East, Inc.*, No. 4:08-CV-103, 2010 WL 234793, at *8 (M.D. Ga. Jan. 12, 2010)("Claims of intentional discrimination under Title VII, Section 1981, and the ADEA have the same requirements of proof." (citing *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007); *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001))).

However, in *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009), the United States Supreme Court held that to demonstrate a disparate treatment claim under the ADEA, "[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision."  Contrary to Title VII, the Court found that "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a *motivating factor*." *Id*. at 2349 (emphasis added); *See* 42 U.S.C. § 2000e-2(m)("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). In so holding, the Court noted that it had never "definitively decided" whether the *McDonnell Douglas* burden-shifting framework applied to ADEA claims and reserved the question whether

*McDonnell Douglas* remained appropriate in the ADEA context. *Gross*, 129 S. Ct. at 2349 n.2.

Because the Supreme Court refrained from explicitly overruling the application of the *McDonnell Douglas* test to ADEA claims relying upon circumstantial evidence, the Eleventh Circuit continues to utilize the test notwithstanding *Gross*. *See*, *e.g.*, *Porter v. Am. Cast Iron Pipe Co.*, 427 Fed. Appx. 734, 736 (11th Cir. 2011). Several recent Eleventh Circuit cases, have reviewed circumstantial ADEA cases under both *McDonnell Douglas* and a "*Gross* test." *Thomas v. Humana Health Plan, Inc.*, No. 10–15120, 2012 WL 180881, *2 n.4 (11th Cir. Jan. 24, 2012); *East v. Clayton County*, 436 Fed. Appx. 904, 912 (11th Cir. 2011). The "*Gross* test" simply provides that, as an alternative to *McDonnell Douglas*, "an ADEA plaintiff can succeed by proving that 'age was the 'but-for' cause of the challenged employer decision.'" *Thomas*, 2012 WL 180881 at *2 n.4 (quoting *Gross*, 129 S. Ct. at 2351). In *Thomas* and *East*, the Eleventh Circuit found that because the ADEA plaintiffs could not establish a meritorious age discrimination claim under the burden-shifting framework of *McDonnell Douglas*, the plaintiffs also could not demonstrate that age was the "but-for" reason for the employer's action. *Thomas*, 2012 WL 180881 at *2 n.4 ("[F]or the same reasons discussed [in the court's *McDonnell Douglas* analysis], [plaintiff] has not proven that age was the 'but-for' cause of the challenged employer decision. (internal quotations and citation omitted)); *East*, 436 Fed. Appx. at 912 ("[Plaintiff] failed to meet his burden to show that the defendants' proffered reasons for terminating him were pretextual. For the same reasons, he has also failed to present evidence establishing that age discrimination was the

'but-for' cause of his adverse employment action to meet the *Gross* test." (internal citation omitted)).   Accordingly, the court will analyze Plaintiff's ADEA discrimination claim in conjunction with its analysis of Plaintiff's claims brought under Title VII and Section 1981, keeping in mind that age must be the "but-for" cause of Plaintiff's termination and race need only be a "motivating factor."

### i.   Prima Facie Case

"To establish a prima facie case of discriminatory discharge, the plaintiff must show that she (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).   Alternatively, Plaintiff may demonstrate a prima facie case of discriminatory discharge by showing that "[she] is a member of a protected class, that [she] was qualified for the job from which [she] was fired, and 'that the misconduct for which [she] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'" *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984)(quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982))(latter two alterations in original).   The successful demonstration of a prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against her." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).

It is undisputed that Plaintiff was a member of protected classes (Caucasian and over the age of 40), was qualified to perform her job responsibilities, and was subjected to an adverse employment action when she was terminated.  Defendant challenges Plaintiff's ability to demonstrate the fourth-prong.

### a.  Lamesa Brooks - Alleged Comparator[12]

Defendant argues that Plaintiff has not proffered evidence demonstrating that similarly situated employees outside her protected classes were treated more favorably despite engaging in nearly identical misconduct. (Doc. 21 at 21-22.)  Plaintiff contends that Brooks, an African-American Office Operations Supervisor in her thirties, violated Defendant's cash handling policies and was not terminated.  (Doc. 24 at 24-25.)  If Brooks is "similarly situated" under the prevailing law and Defendant treated her more favorably, Plaintiff fulfills the fourth-prong of her age and race discrimination prima facie cases.[13]

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)(citing *Williams v. Ford Motor Co.*, 14 F.3d

---

[12]Although the court has struck the evidence regarding Ms. Brooks, *see* Order on Motion to Strike, the court will nevertheless address Plaintiff's arguments that she is a proper comparator.

[13]Plaintiff attempts to establish the fourth element of her age discrimination claim through evidence that she was replaced by Crawford, a person not in the protected class. (Doc. 24 at 19.)  However, because Brooks is below the age of 40 and unprotected by the provisions of the ADEA, Plaintiff could successfully fulfill the fourth element of her age discrimination claim with evidence that Brooks was a similarly situated employee who was treated more favorably despite engaging in nearly identical misconduct.

1305, 1309 (8th Cir. 1994)).  The alleged comparator must be "similarly situated in all relevant respects." *Id*. (citations omitted).  In a discriminatory discharge case, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(citing *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989) *overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004)).  "Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples." *Dartmouth Review*, 889 F.2d at 19.  In comparing apples to apples, "the most important variables . . . are the nature of the offenses committed and the nature of the punishments imposed." *Jones v. Gerwens*, 874 F.2d 1534, 1539-40 (11th Cir. 1989)(quotations and citation omitted).

Defendant allegedly discharged Plaintiff for multiple procedural and policy violations which resulted in Garner stealing approximately $1,500. (Doc. 22-12 at ¶ 16, Wilder Aff.; doc. 25-4, Pl.'s Ex. 4.)  Plaintiff claims that she has presented evidence that Brooks committed similar cash handling violations without reprimand. (Doc. 24 at 24-25.) However, the court knows nothing about Brooks's ***specific*** misconduct.  Plaintiff's evidence, or lack thereof, resembles the comparator evidence offered in the Eleventh Circuit decision of *Roy v. Broward Sheriff's Office*, 160 Fed. Appx. 873 (11th Cir. 2005).  In that case, the court stated:

> [Plaintiff's] evidence tells us nothing about the seriousness or the nature of either [comparator's] misconduct. We only know that these employees

> violated the same general provisions of the BSO Manual as [plaintiff] did.
> We know nothing of their specific misconduct. Consequently, we cannot find
> them to be similarly situated comparators.

*Id*. at 876 (footnote omitted).  Similarly, the extent of Plaintiff's comparator evidence is her

own deposition testimony that Holly Millican told her that Brooks had not followed the

appropriate cash handling procedures at the Trussville office. (Doc. 24 at 24-25; Pl.'s Depo.

at 50:13-18.)  Even if this evidence was admissible, which it is not,[14] this evidence is

insufficient as a matter of law.  Because Plaintiff has not "provide[d] facts necessary to

determine with relative certainty the degree to which [her] circumstances were similar to

those of her alleged comparator[]," Brooks cannot be considered similarly situated for the

purposes of establishing a prima facie case of discrimination based on either race or age.

*Cannon v. Dyncorp*, 462 F. Supp. 2d 1190, 1201 (M.D. Ala. 2005).

The court also notes that there is no evidence before the court that Oliver, the decision

maker, knew of Brooks's alleged cash handling infractions.  "Employees are not 'similarly

situated' if management is aware of one's improper conduct, but not aware of the others'

conduct." *Amos v. Tyson Foods, Inc.*, 153 Fed. Appx. 637, 647 (11th Cir. 2005)(citations

omitted); *see, e.g., Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir.

2003)(unless the decisionmaker(s) knew of the comparator's misconduct, "the events cannot

be considered in determining whether [the plaintiff] and [the comparator] are similarly

situated").  Accordingly, even assuming that Plaintiff adduced evidence demonstrating that

Brooks engaged in "nearly identical" misconduct, Defendant cannot be said to have treated

---

[14]*See* ruling on defendant's Motion to Strike.

20

Brooks more favorably without evidence showing that Oliver was aware of Brooks's conduct.

Because Plaintiff has not offered any additional evidence relating to the fourth-prong of her race discrimination claims, the court grants Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and Section 1981 race discrimination claims, and such claims are due to be dismissed.

### b.    Collete Crawford - Plaintiff's Replacement

Plaintiff contends that she can demonstrate the fourth-prong of her prima facie age discrimination claim because Crawford, a 37-year-old Caucasian, replaced her as Office Operations Supervisor at the Vestavia Hills office location. (Doc. 24 at 19.)  Defendant contends that Crawford ***temporarily*** replaced Plaintiff's position for a two-month period following her termination and "[t]emporarily filling a position with someone outside of a protected class does not satisfy the fourth prong of a prima facie case of . . . discrimination." (Doc. 26 at 6.)  Defendant states that Green, a Caucasian over the age of 40, permanently replaced Plaintiff. (*Id*.)

As noted above, for purposes of this summary judgment motion, the court will assume that Crawford replaced the Plaintiff.  Therefore, Plaintiff has established a prima facie case of age discrimination.

### ii.    Non-Discriminatory Reason

Because Plaintiff has carried her prima facie burden for her claim of age discrimination, the *McDonnell Douglas* test shifts the burden of production to Defendant to

21

articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 811. "[T]he defendant's burden of rebuttal is exceedingly light; 'the defendant need not persuade the court that it was actually motivated by the proffered reasons . . . it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)(quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)).  As a general rule, "the bare articulation of a legitimate[,] non-discriminatory explanation generally suffices to undermine a plaintiff's initial proof." *Griffin v. Carlin*, 755 F.2d 1516, 1527 (11th Cir. 1985)(citation omitted).

Plaintiff's termination sheet delineates the reasons for her termination as follows: "[Plaintiff] failed to provide necessary oversight and failed to follow proper procedures regarding cash payment deletion and adjustment verifications as her position requires." (Doc. 25-4, Pl.'s Ex. 4.)  Other record evidence indicates that Plaintiff's failure to secure her confidential computer log-in information also factored into her termination. (Doc. 22-12 at 26, Wilder Aff. Ex. 4.) The court finds these articulated reasons sufficient to allow a reasonable factfinder to conclude that Defendant terminated Plaintiff due to legitimate, non-discriminatory motives.

### iii.    Pretext

Because Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's discharge, *McDonnell Douglas* shifts the burden back to Plaintiff to show that Defendant's stated reasons are merely pretext for unlawful age discrimination. *Burdine*, 450

U.S. at 253 (citation omitted).  A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 256.  The court's inquiry on the issue of pretext is "highly focused" – "The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)(internal quotations and citation omitted); *See also Springer*, 509 F.3d at 1350 ("If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." (quotations and citation omitted)).  The Eleventh Circuit has "repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)(citing *Elrod*, 939 F.2d at 1470). The court is "not in the business of adjudging whether employment decisions are prudent or fair. Instead, [its] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Id*. (citing *Nix*, 738 F.2d at 1187).

Plaintiff contends that the following pieces of evidence demonstrate that Defendant terminated her on account of her age: (1) Brooks had not followed Defendant's cash handling procedures as the Office Operations Supervisor at the Trussville office and was not

terminated;[15] (2) other Office Operations Supervisors kept their computer log-in credentials in notebooks and were not terminated; (3) Defendant accelerated the disciplinary measures contained in its progressive corrective action plan notwithstanding the fact Plaintiff had never previously been disciplined; (4) Oliver and Crawford made derogatory age-related comments about Sharon Walker, an employee in her sixties; and (5) Oliver once informed Plaintiff that she intended to transfer Crawford to the Vestavia Hills office. (Doc. 24 at 20-22.)  Also, three of the four arguments that Plaintiff advances as evidencing pretext of race discrimination could also demonstrate pretext in the age discrimination context: (5) Brooks received a laptop computer, and Plaintiff did not; (6) Brooks allegedly violated Defendant's dress code without reprimand; and (7) other employees received one day of cash handling training, and Plaintiff did not. (*Id*. at 25-26.)

###### a.    More Favorable Treatment of Brooks[16]

Even assuming this evidence was admissible and assuming the misconduct was sufficiently similar, Plaintiff has not proffered evidence that the decision maker, Oliver, knew of Brooks's misconduct.  Plaintiff cannot establish pretext based on a comparison of their cash handling infractions.  As noted by the Middle District of Alabama:

> Evidence of a similarly situated comparator who was treated more favorably could serve both to establish an element of the prima facie case of discriminatory discipline and to establish pretext. However, resolving the issue in defendant's favor at the first stage of the burden-shifting analysis renders consideration of the remaining stages of the *McDonnell Douglas* framework unnecessary.

---

[15]As noted above, this evidence is due to be stricken.

[16]As noted, this evidence is due to be stricken on hearsay grounds.

*White v. Russell Corp.*, No. 3:08CV401-SRW, 2009 WL 4827407, at *5 n.5 (M.D. Ala. Dec.

10, 2009).  Thus, because Brooks is an improper comparator in the prima facie context,

Plaintiff cannot use that same evidence to establish pretext.

Moreover, Plaintiff's assertion that her failure to receive a laptop computer, and

Brooks's receipt of the same, rebuts Defendant's articulated reasons for her termination is

also unpersuasive.[17]  Plaintiff claims Brooks received a laptop despite the fact that she, like

Plaintiff, supervised one office location. (Doc. 24 at 25-26.)  This assertion is unsupported

by the record.  Plaintiff's own deposition testimony plainly reveals that Brooks supervised

the Gardendale ***and*** Trussville offices at the time of her reassignment, and Plaintiff has not

adduced evidence indicating that Brooks received her laptop after the Trussville office

closed. (Pl.'s Depo. at 40:1-5.).  Her deposition testimony actually suggests that Brooks

received her laptop at a time she supervised both offices.[18] (*Id.* at 38:12-17, 40:1-5, 123:8-

10.)  What is more, the IT ticket generated from Plaintiff's laptop requisition states "if the

position does not require travel[,] laptops are not issued." (Doc. 25-1 at 2, Pl.'s Ex. 1.)

---

[17]Plaintiff does not argue that Crawford's receipt of a laptop demonstrates pretext of age discrimination.

[18] Early in her deposition, Plaintiff testified that Brooks received her laptop at the time of her reassignment to the Gardendale office. (Pl.'s Depo. at 38:12-17 ["I never received [a laptop] my entire employment with [Defendant], but [Brooks] did, and she also removed her desktop out of the office that I was moving into to go to her new office. She took her phone, her desktop and she also received a laptop PC."].)  At that time, Brooks also supervised the Trussville office.  Although Plaintiff later testifies that she cannot be certain when Brooks received her laptop, she assumes that Brooks received her laptop prior to the closing of the Trussville office. (*Id.* at 123:8-10.)

Plaintiff testified that she wanted a laptop in order to work *from home*, and Wilder testified that Plaintiff's position "very rarely" required travel. (Pl.'s Depo. at 102:1-8, 102:14-16; doc. 25-6 at 21:7-13, Wilder Depo.).  Thus, there is no evidence before the court that Defendant deviated from standard procedure in providing Brooks a laptop and denying Plaintiff the same.

Equally unpersuasive is Plaintiff's attempt to establish pretext through Brooks's alleged violations of Defendant's dress code.  While Oliver may have permitted Brooks to violate Defendant's dress code, Plaintiff has not produced evidence that Oliver disparately enforced the dress code against any older employee.  As it stands, Oliver may have simply allowed dress code infractions to go unpunished.  This fact does not demonstrate that Defendant's articulated reasons for Plaintiff's termination are unworthy of credence.

**b.    Other Office Operations Supervisors Kept Their Computer Log-in Credentials in Similar Notebooks**

Plaintiff's evidence that other Office Operations Supervisors kept their computer log-in credentials in similar notebooks fails to demonstrate pretext.  Defendant's policy requires that employees keep their log-in information confidential, (doc. 22-15 at 9, Wilder Aff. Ex. 5), and Plaintiff has not adduced evidence that, like Plaintiff, other supervisors kept their notebooks in a place accessible to other employees.  Even assuming she had, Plaintiff has not offered evidence that Oliver was aware that other supervisors violated the policy. *See Amos*, 153 Fed. Appx. at 647.

### c.      "Harsh" Application of Defendant's Discipline Policy

Plaintiff emphasizes that she had no prior history of workplace discipline, and Defendant's progressive discipline policy does not require termination for violating cash handling procedures. (Doc. 24 at 21-22.)  Defendant's progressive discipline policy is clear:

> Employment with Charter is at-will and the company may use progressive corrective action under said policy *at its discretion*. Corrective action may include any or all the disciplinary steps.   *There are certain types of performance problems or misconduct that are serious enough to justify accelerating these steps, including immediate termination, without going through the progressive corrective action steps*.

(Doc. 25-4, Pl.'s Ex. 4 [emphasis added].)  In the Eleventh Circuit, "if management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext." *Ritchie v. Indus. Steel, Inc.*, 426 Fed. Appx. 867, 873 (11th Cir. 2011)(citing *Morris v. City of Chillicothe*, 512 F.3d 1013, 1020 (8th Cir. 2008)). Consequently, Plaintiff's contention that Defendant unjustly applied its discretionary discipline policy does not establish pretext.

### d.      Cash Handling Training

Plaintiff further argues that Defendant's failure to provide her with cash handling training despite providing Portia Ragland the same establishes pretext as to Defendant's articulated reasons for her discharge in the race discrimination context. (Doc. 24 at 26.) This argument could also demonstrate pretext in the age discrimination context because Crawford also received the training which Plaintiff was denied. (Pl.'s Depo. at 62:11-15.)  However, Plaintiff's alleged lack of training does not demonstrate pretext.  Plaintiff testified that the Vestavia Hills office had "heavy traffic," and that similar cash handling training "was not

available to [her], because [the Vestavia Hills office] had so much traffic [that she] needed

to be there," (*Id*. at 62:16-22).   Moreover, Oliver provided Plaintiff with a "coaching"

pertaining to Defendant's cash handling procedures.[19] (Doc. 22-12 at 20, Wilder Aff. Ex. 3.)

Thus, not only did Plaintiff receive some instruction concerning Defendant's cash handling

procedures, the record reflects that Defendant's failure to provide Plaintiff with similar cash

handling training stemmed from the Vestavia Hills office's "heavy traffic," not

discriminatory animus.

### e.   Oliver Intended to Transfer Crawford to the Vestavia Hills Office

The fact that Oliver mentioned that she intended to reassign Crawford to the Vestavia

Hills office and reassign Plaintiff to the Tuscaloosa and Jasper offices also fails to

demonstrate pretext.   Plaintiff contends that this statement was made before the violation

which led to Plaintiff's termination.   (Doc. 24 at 2.)   She argues "A reasonable jury could

conclude that Oliver decided to replace Plaintiff with the much younger Crawford, then

looked for an excuse."   (*Id*. at 23.)   There is nothing in the record that would support such

an inference.   Plaintiff's testimony is unclear whether she even perceived the prospective

reassignment as discriminatory in nature. (Pl.'s Depo. at 84:21-85:1 [Q. [D]o you think this

had something to do with your age?   A.   I was definitely in my forties, and Ms. Crawford,

I assume, was in her thirties.")   Rather, when asked whether she thought the prospective

---

[19]A "coaching" is "an informal conversation typically between a manager and the employee that addresses either an issue or concern. [It is] a pre-step in corrective action." (Doc. 25-6 at 43:19-23, Wilder Depo.)   "Coachings" are not considered formal discipline. (*Id*. 43:10-12.)

reassignment was motivated by her race, Plaintiff testified that "[Oliver] had bonded with Ms. Crawford, she was trying to help out Ms. Crawford." (*Id*. at 84:10-14.)  This evidence does not establish pretext as to defendant's legitimate, non-discriminatory reason for plaintiff's discharge.

### f.    Derogatory Comments Relating to Sharon Walker

Plaintiff also contends that the age-related comments made by Oliver and Crawford about Walker establish pretext.   Crawford's comment that Walker was "older and opinionated . . . and possibly it was time [for her] to leave" does not establish pretext because there is no evidence that Crawford, an Office Operators Supervisor like Plaintiff, played any role in plaintiff's  termination, *see, e.g.*, *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253, 1272 (N.D. Ala. 2002)("[C]omments indicating an improper bias by non-decisionmakers generally do not raise an inference of discrimination or pretext on the part of the employer." (citing *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999); *Conto v. Concord Hosp., Inc.*, 265 F.3d 79, 81 n.4 (1st Cir. 2001); *Cardenas v. AT & T Corp.*, 245 F.3d 994, 1000 (8th Cir. 2001))).  Standing alone, Oliver's comment that Walker "needed to retire and get on with it" is insufficient to establish a circumstantial case for pretext "absent some additional evidence supporting a finding of pretext." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002)(citing *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286 (11th Cir. 1998); *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002)).   In *Ross,* the Eleventh Circuit determined that a decisionmaker's isolated discriminatory remark, unrelated to the challenged adverse employment action, may

constitute circumstantial evidence supporting a finding of pretext "when read in conjunction with the entire record." 146 F.3d at 1292.  In that case, the decisionmaker's comment coupled with evidence that the decisionmaker engaged in the same activity for which the plaintiff was allegedly terminated constituted pretext. *Id*.  Here, Plaintiff has not adduced any evidence on which a reasonable jury could find that Defendant's articulated reasons are unworthy of credence; therefore, the court finds Oliver's comment is insufficient to support a finding of pretext.

Based on the evidence proffered by plaintiff, no reasonable jury could find that Defendant's articulated reasons for her termination are unworthy of credence and that age was the "but-for" reason for Plaintiff's termination pursuant to *Gross*.   Therefore, Defendant's Motion for Summary Judgment is due to be granted, and Plaintiff's claim of age discrimination will be dismissed.[20]

---

[20]Assuming *arguendo* that Plaintiff established a prima facie case of race discrimination, she could not demonstrate that Defendant's articulated reasons are pretextual based on the court's pretext analysis *supra*.  Plaintiff advances only one argument in support of pretext in the race discrimination context which the court has not addressed in its pretext analysis for age discrimination.  According to Plaintiff, some of her subordinates told her that Brooks would not have been terminated for similar cash handling violations due to her race. (Pl.'s Depo. at 65:20-23.)  Hearsay considerations aside, the opinions of these other employees amount to rank speculation and conjecture.  Unsupported speculation is not evidence, and the court will not consider it as such.  It is well-settled that "unsupported and speculative contentions fall short of creating a genuine issue of material fact." *Rutland v. State Farm Mut. Auto. Ins. Co.*, 426 Fed. Appx. 771, 775 (11th Cir. 2011).

## C.     RETALIATION CLAIMS (COUNT II, COUNT IV, COUNT VI)

Plaintiff made the following complaints during her tenure with Defendant: (1) Complaint to Oliver about not receiving a laptop; (2) Complaint to Pitmon about Oliver's mistreatment after Plaintiff reported the Garner allegations directly to Pitmon in Human Resources; and (3) Complaint to Defendant's marketing director from Atlanta about her excessive workload.  Defendant argues that the court should dismiss Plaintiff's retaliation claims because, *inter alia*, neither complaint constitutes protected activity under the abovementioned statutes. (Doc. 21 at 29-30.)   The court agrees.

Title VII's anti-retaliation provision prohibits retaliation against an employee because "[she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  The ADEA contains a similar provision. 29 U.S.C. § 623(d).  Even though § 1981 does not contain an explicit prohibition against retaliation, the Supreme Court has held that retaliation claims asserted in the context of a claim of racial discrimination are actionable under that statute. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008).

The *McDonnell Douglas* burden-shifting framework also governs our retaliation analysis.  To establish a claim of retaliation under either Title VII, Section 1981, or the ADEA, a plaintiff must first prove that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) the two events are causally connected. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)(citing *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)); *See also Armbrester v. Talladega City Bd. of Educ.*, 325 Fed. Appx. 877, 879 n.4 (11th Cir. 2009)(observing that *McDonnell*

*Douglas* applies to Title VII, Section 1981, and ADEA retaliation claims).  Just as with discrimination claims, a successful prima facie showing shifts the burden to Defendant to produce legitimate, non-discriminatory reasons for its purportedly unlawful acts. *Armbrester*, 325 Fed. Appx. at 879.  Then, the burden will shift back to plaintiff to show that those reasons are pretextual. *Id*.

Because Plaintiff has not proffered evidence that she engaged in protected activity, Plaintiff cannot establish the first element of her prima facie retaliation claims.  Therefore, Defendant's Motion for Summary Judgment is due to be granted on Plaintiff's Title VII, Section 1981, and ADEA retaliation claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, (doc. 20), is due to be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this 26th day of March, 2012.

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE